**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW F. MCFADDEN, an individual,<br><br>                          Plaintiff,<br>  vs.<br><br>CITY OF EL CENTRO,<br><br>                          Defendant. | CASE NO. 10cv2042-WQH-WMc<br><br>ORDER |

HAYES, Judge:

      The matter before the Court is the Motion for Summary Judgment or Partial Summary Judgment filed by Defendant City of El Centro. (ECF No. 34).

**BACKGROUND**

      On September 30, 2010, Plaintiff initiated this action by filing a complaint against the City of El Centro. (ECF No. 1). On December 6, 2010, Plaintiff filed a First Amended Complaint alleging causes of action for (1) race discrimination in violation of Title VII and the California Fair Employment and Housing Act ("FEHA"), (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), (3) retaliation in violation of Title VII and FEHA, and (4) deprivation of civil rights under 42 U.S.C. § 1983 relating to Plaintiff's employment as a police officer with the City of El Centro. (ECF No. 8).

      On February 7, 2012, Defendant filed a Motion for Summary Judgment or Partial Summary Judgment. (ECF No. 34). Defendant contends that it is entitled to judgment as a matter of law on the grounds that (1) Plaintiff cannot establish a causal connection between

his race and any adverse employment action, (2) Plaintiff cannot establish that he suffers from a qualifying disability, (3) Plaintiff cannot establish a causal connection between a protected activity and any adverse employment action, and (4) Plaintiff cannot establish that he was deprived of a constitutional right without due process. On September 7, 2012, Plaintiff filed an opposition to the motion for summary judgment which he amended on September 18, 2012. (ECF Nos. 43, 46). On September 14, 2012, Defendant filed a reply. (ECF No. 45).

**UNDISPUTED MATERIAL FACTS**

**A.  Plaintiff's Work History and Performance**

Plaintiff, an African-American male, was hired by the City of El Centro as a police officer in September 1989. Plaintiff worked as a police officer on patrol duties until 1998 when he became a School Resource Officer for the Central Union High School District. In July 2004, Plaintiff returned to patrol duties as a police officer for the City under the supervision of Sergeant John Seaman.

Around March 1999, Plaintiff filed a grievance alleging that Sergeant Theresa Quinn spoke publicly about Plaintiff's poor report writing skills. The grievance did not allege discrimination on the basis of Plaintiff's race or any disability.

Around October 2004, Plaintiff filed a grievance against Sgt. Seaman in response to a Supervisor's Report that Sgt. Seaman wrote requesting disciplinary action be imposed against Plaintiff for insubordination. In the grievance, Plaintiff states that Sgt. Seaman abused and exceeded his authority, failed to deal fairly and impartially in his official capacity, intended to make misrepresentations, and created a hostile work environment. The grievance did not allege discrimination on the basis of Plaintiff's race or any disability.

In August 2005, Plaintiff received an annual performance evaluation prepared by Sgt. Seaman in which Plaintiff was given unsatisfactory reviews in several areas, including interview and interrogation, beat/area practices and responsibility, following work instructions and submitting work promptly and accurately, exercising reasonable judgment and discretion, performing under pressure, willingness to encourage coworkers and exhibit team work, and the ability to maintain proper contact and appropriate coverage when involved with an

incident. Plaintiff filed an employee grievance form and wrote a written response to Sgt. Seaman's evaluation. In his grievance, Plaintiff states that Sgt. Seaman abused authority, created a hostile work environment, was retaliatory in nature, and failed to deal fairly and impartially in his official capacity. Neither the employee grievance nor the written response alleged discrimination on the basis of Plaintiff's race or any disability.

In response to Plaintiff's grievance, Commander Paul Longoria assigned Plaintiff to Sergeant Mike Crankshaw's patrol team for evaluation of Plaintiff's ability as an Officer in Charge, his on-site productivity, and his report writing ability. According to Sgt. Crankshaw, Plaintiff performed satisfactorily on his team. Plaintiff was reassigned to Sgt. Seaman's patrol team.

On July 13, 2006, Sgt. Quinn recommended suspending Plaintiff's duties as Officer in Charge as a result of Plaintiff's poor performance. Plaintiff wrote a response to Sgt. Quinn's recommendation. On September 22, 2006, Cdr. Longoria reassigned Plaintiff to another patrol team and reinstated Plaintiff's eligibility to perform as Officer in Charge.

In September 2009, Plaintiff received another performance evaluation from Sgt. Quinn which described Plaintiff's job performance as needing improvement. Plaintiff wrote a response to the September 2009 performance evaluation.

In his declaration, Plaintiff states: "I feel that one of the reasons I have been treated harshly is that I spoke up against the actions being taken against the African-American Chief, Leonard Knight. Criticism of my work skills became notably worse after I defended him .... No other Chiefs or Sergeants were treated the way the supervisors and staff treated Chief Knight." (ECF No. 46-4 at 2-3). Plaintiff states: "No other employee that I know of in the El Centro Police D[e]p[artmen]t has been treated like I have. Other officers have been promoted ahead of me and I have been treated with disrespect on a constant basis." *Id.*

Plaintiff has never been demoted while employed by the City.

**B.    Promotion Policies and Practices**

At his November 3, 2011 deposition, Plaintiff gave the following testimony:

O ... What does a sergeants exam consist of?
A It is a written exam; and then, there is an essay exam ...

> Q And is there a minimum standard for passing the exam?
> A Seventy percent.
> Q And you're required to pass both halves of the exam?
> A Yes.
> Q At any time, have you ever passed both halves of the exam?
> A Yes.
> Q When?
> A ... that was probably about ten years ago [2001].

(ECF No. 46-3 at 95-96).

Defendant submits the declaration of Police Chief Jim McGinley who states:

> Based upon my review of the CITY's records for promotional testing for the position of Sergeant with the CITY, it appears that plaintiff took and passed the Sergeant's test in December 2004, with a rank of two on the eligibility list. Plaintiff was not selected, however. My review of the CITY's testing records indicates that plaintiff took the Sergeant's test a number of times after 2004, however, plaintiff did not score high enough on the written portion of the exam to warrant a placement on the eligibility list for the position. An eligibility list for the position of Sergeant is valid for a period of one year, after which the test must be retaken in order to qualify for eligibility.

(ECF No. 34-4 at 3-4).

On November 17, 2009, Police Chief McGinley issued a directive stating that officers would not be eligible for an Officer in Charge position for a period of one year if they had received a written reprimand. Police Chief McGinley states that the directive impacted two other officers in addition to Plaintiff: a white male and a Hispanic male. Police Chief McGinley states that Plaintiff's complaints of discrimination played no role in his decision to issue the November 17, 2009 directive.

**C.  Plaintiff's Disabilities**

Plaintiff states: "In 2004, I informed my employer that I had been diagnosed with Attention Deficit Disorder ['ADD']."  (ECF No. 46-4 at 2).  Plaintiff states: "I was able to perform all aspects of my job when I was being treated for ADD. My only issues may have been with writing because I also have dyslexia, however, I labored over my reports and brought them into conformance as much as possible without accommodation." *Id.* at 3.

On February 15, 2010, Plaintiff's attorney sent Defendant a letter stating his opinion that Plaintiff suffered from Dyslexia and that Plaintiff had been diagnosed with ADD in 2004 or 2005. Police Chief McGinley states in his declaration that, "[i]n response to the letter [from Plaintiff's attorney dated February 15, 2010], the CITY set up an interactive process meeting,

1  but after repeated requests, plaintiff has never provided any medical evidence of a disability."
2  (ECF No. 34-4 at 3).

3       Plaintiff states: "I went ... to the doctor and obtained a formal report regarding ADD and
4  Dyslexia in 2010." (ECF No. 46-4 at 3). Plaintiff submits two "letter[s] from my doctor."
5  (ECF No. 46-4 at 2). The first is a letter from Edward Cherlin, M.D., dated August 2, 2010,
6  addressed to Plaintiff's former counsel. In the letter, Cherlin states: "I have been treating
7  [Plaintiff] since October 21, 2004, for attention deficit hyperactivity disorder .... It is
8  mentioned in [Plaintiff counsel's] letter that there is cause for concern regarding a possible
9  dyslexic condition. I have never assessed [Plaintiff] or treated him for this and this, frankly,
10 has not been brought to my attention previously." (ECF No. 46-3 at 127). Plaintiff also
11 submits an undated "Neuropsychological Assessment" from the Applied Neuropsychology
12 Institute stating that Plaintiff was examined on September 16, 2010 and March 7, 2011 and
13 subsequently diagnosed with "Dyslexia and Dysgraphia." *Id.* at 131-38.

14 **D.    Plaintiff's Formal Complaints**

15      Plaintiff submits his own declaration which states "After Sgt. Seaman became my
16 supervisor and before the negative 2005 yearly evaluation, I informed the City of El Centro,
17 via a grievance, that I believed Sgt. Seaman had given me a negative evaluation because of my
18 race. My grievance went up the chain of command and was evaluated by the City Attorney
19 who found that there was no basis for the negative evaluation. The report at issue was a
20 September 20, 2004 Supervisor's Report prepared by Sgt. John Seaman." (ECF No. 46-4 at
21 2). Plaintiff attaches the grievance he filed in response to Sgt. Seaman's September 20, 2004
22 Supervisor's Report. (ECF No. 46-3 at 15-24). The grievance does not allege any
23 discrimination on the basis of Plaintiff's race.

24      Plaintiff gave the following deposition testimony: "Q Other than your belief that they
25 were inaccurate comments in his evaluation, do you have any evidence that [Sgt. Seaman]
26 criticized you because of your race? A No." (ECF No. 46-3 at 108).

27      On June 4, 2009, Plaintiff filed a formal complaint of harassment, retaliation, and
28 hostile work environment with the City of El Cajon. Plaintiff stated that Sgt. Quinn was biased

against him, that he was being retaliated against for complaining to the Interim Police Chief about department staff and for vocally defending Police Chief Knight, that his reports were being tampered with, that he was being micromanaged, and that his reports were subject to unreasonably heightened scrutiny.

On September 14, 2009, Plaintiff filed a complaint of discrimination with the Department of Fair Employment and Housing alleging race discrimination and a hostile work environment within the El Centro Police Department. Plaintiff alleged that the discrimination started in January 2009.

On April 30, 2010, Plaintiff filed charges of disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

## DISCUSSION

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn

in their favor. *See id.*

## A.    Race Discrimination Under Title VII and FEHA

Defendant contends that "[r]ace has played no factor in plaintiff's lack of success at being promoted. Plaintiff has a mediocre employment history with the CITY at best, given the various needs improvement performance appraisals plaintiff earned during his employment." (ECF No. 34-1 at 13-14). Defendant contends that "only superior performing officers with no disciplinary records [shall] be eligible for promotion and for the Officer in Charge position .... [and that] plaintiff was not the only individual to whom this policy was applied as other officers with reprimands were not permitted to join the S.W.A.T. team or act as Officer in Charge, including officers who were not African-American or disabled." *Id.* at 13.

Plaintiff contends that he "performed according to his employers legitimate expectations," received some satisfactory reviews and commendations, and "was performing well enough to remain employed with Defendant for many years." (ECF No. 46-1 at 12). Plaintiff contends that "[o]ther employees with qualifications similar to his own were treated more favorably by receiving promotions and other favorable treatment, and by not being scrutinized on a constant basis.... They received promotions and praise for performing just as Plaintiff performed." *Id.* Plaintiff contends that he "performed in an exemplary manner which well exceeded his employer's expectations." *Id.* at 13.

A plaintiff asserting a claim of racial discrimination under Title VII and FEHA carries the initial burden of establishing a prima facie case of racial discrimination. Plaintiff must show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-802, 93 S.Ct. 1817, 1824 (1973). If based on circumstantial evidence alone, the prima facie case may be established by plaintiffs showing "(1) that they are members of a protected class; (2) that they were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions;

and (4) that 'similarly situated individuals outside [their] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Hawn v. Executive Jet Management, Inc*., 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting *Peterson v. Hewlett–Packard Co.,* 358 F.3d 599, 603 (9th Cir. 2004)). Plaintiffs "must offer evidence that gives rise to an inference of unlawful discrimination." *Id.* (quotations omitted).

Under *McDonnell Douglas*, once the plaintiff establishes a prima facie case of either discrimination or retaliation, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory or retaliatory conduct. *McDonnell Douglas,* 411 U.S. at 802-805; *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1106 (9th Cir. 2008). If the defendant articulates a legitimate reason for its action, the plaintiff may then offer evidence that the proffered nondiscriminatory reason is merely a pretext for discrimination. *Surrell,* 518 F.3d at 1106; *see also Bradley v. Harcourt, Brace and Co.,* 104 F.3d 267, 270 (9th Cir. 1996) ("To avoid summary judgment, ... [the plaintiff] 'must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses.' ... She must produce 'specific, substantial evidence of pretext.'" (*quoting Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir.1994)).

In this case, Plaintiff fails to present evidence "that he applied and was qualified for a job for which the employer was seeking applicants," or that "after his rejection, the position remained open and the employer continued to seek applicants from persons of [his] qualifications." *McDonnell Douglas,* 411 U.S. at 801-802. Plaintiff further fails to show evidence that he was "performing [his] job... satisfactorily." *Hawn*, 615 F.3d at 1156; *see Bradley,* 104 F.3d at 270 ("[A]n employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact"). Evidence in the record shows that Plaintiff's work performance as police officer was unsatisfactory from his return to patrol in 2004 through his evaluation in 2009. Evidence in the record shows that, after December 2004, Plaintiff did not pass the qualifying tests to be eligible for promotion. Plaintiff fails to offer evidence, other than his own stated beliefs and conclusory allegations, "that give rise to an

1  inference of unlawful discrimination" on the part of the City of El Cajon in failing to promote
2  Plaintiff. *Id.*

3  Even if Plaintiff were to make a prima facie showing of racial discrimination, the
4  undisputed evidence on the record adequately provides Defendant with a legitimate,
5  nondiscriminatory reason for failing to promote Plaintiff: Plaintiff's well-documented
6  unsatisfactory performance as a patrol officer. Defendant has presented evidence to show "that
7  there is no genuine dispute as to any material fact" regarding Plaintiff's claim for racial
8  discrimination. Fed. R. Civ. P. 56(a). Plaintiff fails to present evidence to show that summary
9  judgment is not appropriate as to this claim. *See Celotex*, 477 U.S. at 322, 324. Defendant's
10 motion for summary judgment on Plaintiff's claim for race discrimination is granted.

11 **B.    Disability Discrimination Under ADA**

12 Defendant asserts that "plaintiff was unaware that he suffered from Dyslexia until six
13 (6) months prior to filing the original Complaint, when his attorney 'diagnosed' him." (ECF
14 No. 34-1 at 15). Defendant contends that there is no evidence that Plaintiff's dyslexia
15 substantially interfered with a major life activity or substantially limited any life activity.
16 Defendants asserts that "once the CITY understood plaintiff was claiming he was disabled, it
17 held a reasonable accommodation meeting with plaintiff to determine what, if any,
18 accommodations would be needed for plaintiff. None were offered or made since plaintiff had
19 no medical certification stating that he actually required an accommodation or that he had a
20 disability .... plaintiff has not produced any medical certification to the CITY stating that he
21 has any type of a disability requiring accommodation." *Id.* at 16.

22 Plaintiff asserts that Defendant was notified that he had Attention Deficit Disorder in
23 2004 and had approved Plaintiff's medication for that disorder for years. Plaintiff contends
24 that Defendant "was also informed of Plaintiff's disability by his attorney and his physicians
25 in 2009." (ECF No. 46-1 at 14). Plaintiff contends that "even without being notified of
26 Plaintiff's need for some type of accommodation, if the adverse employment actions were for
27 misconduct brought on by the disability of which Defendant was apprized [sic], Plaintiff was
28 punished for having a disability." *Id.* at 15.

To state a prima facie case of discrimination under the ADA, a plaintiff is required to show that: (1) he was a disabled person within the meaning of the ADA; (2) he was a qualified individual, meaning he could perform the essential functions of his job; and (3) he suffered an adverse employment action because of his disability. *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir.1999) (citing 42 U.S.C. § 12112(a)). The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C.A. § 12102(1)(A). As a threshold matter, Plaintiff must prove that he has a physical or mental impairment and demonstrate that the impairment limits a major life activity, such as caring for himself, performing manual tasks, learning, breathing, thinking, communicating, or working. 42 U.S.C. § 12102 (2)(A).

Plaintiff states in his declaration that he takes medication for Attention Deficit Disorder and that the condition does not impact his ability to work. Plaintiff stated that he informed Defendant of the condition in 2004 and that Defendant has accommodated the condition by approving Plaintiff's use of medication. Plaintiff fails to come forward with any evidence to show that his Attention Deficit Disorder is an impairment that limits any major life activity or that this condition qualifies him as a disabled person under the ADA.

Plaintiff submits and attaches to his declaration an undated "Neuropsychological Assessment" that states a diagnosis of dyslexia based on examinations of Plaintiff in September 2010 and March 2011. Defendant objects to this document as lacking foundation and the personal knowledge of Plaintiff, hearsay, speculation, opinion and conclusion testimony. (ECF No. 45-1 at 8). The "Neuropsychological Assessment" has not been properly authenticated and cannot be considered by the Court in opposition to Defendant's summary judgment motion. *See* Fed.R.Civ.Pro. 54(c)(4); *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) ("Rule 56(e) . . . requires that a proper foundation be laid for evidence considered on summary judgment. The documents must be authenticated and attached to a declaration wherein the declarant is the person through whom such exhibits could be admitted into evidence." (citation and quotation marks omitted)); *see also Capobianco v. City of New York*, 422 F.3d 47, 55 (2nd Cir. 2005) ("[U]nsworn letters from physicians generally are inadmissible

hearsay that are an insufficient basis for opposing a motion for summary judgment").

Plaintiff was gainfully employed by the City of El Cajon as a police officer for the entire period in question and was never demoted. The evidence on the record shows that Plaintiff was not promoted because he could not pass the eligibility tests for a promotion, and that Plaintiff was periodically relieved of Officer in Charge duties because of his poor performance in a number of areas. Even if the Court were to consider Plaintiff's proffered evidence suggesting he suffered from dyslexia, Plaintiff fails to come forward with any evidence to show that the condition is an impairment that limits a major life activity for him.

The record contains no evidence of Plaintiff suffering from a disability that might qualify him for protection under the ADA. Plaintiff fails to make a prima facie showing of disability discrimination. Defendant's motion for summary judgment on Plaintiff's claim for disability discrimination is granted.

**C.     Retaliation Under Title VII and FEHA**

Defendant contends that "plaintiff was denied the Officer in Charge status [due to his poor work performance] prior to his filing a complaint of hostile work environment with the CITY" and "there was a history of 'adverse job actions' taken prior to plaintiff ever filing a DFEH charge against the CITY." (ECF No. 34-1 at 17). Defendant contends that "plaintiff was prohibited from acting as the Officer in Charge in 2009 following a long series of behavioral and performance issues." *Id.* at 18. Defendant contends that "the policy to prohibit employees with reprimands from becoming Officer in Charge was not limited only to plaintiff" and that two other officers, one white and one Hispanic, were subject to the same restriction. *Id.* Defendant contends that it "had a legitimate, non-discriminatory reason for prohibiting plaintiff from becoming an Officer in Charge." *Id.* at 17.

Plaintiff contends that "[h]e complained of actions taken against him and informed his employer that he felt he was the victim of racial discrimination. After his complaints, Plaintiff received ongoing negative evaluations on a regular basis.... The retaliation took the form of devastating evaluations, refusals to promote, and numerous supervisors alleging misconduct." (ECF No. 43-1 at 15, 17). Plaintiff contends that "there is no credible evidence" to support

1  Defendant's position that Plaintiff was not made Officer in Charge because of behavioral and
2  performance issues or that the policy to prohibit employees with reprimands from becoming
3  Officer in Charge "was not enacted solely for Plaintiff or that there were either no other
4  persons affected." *Id.* at 17.

5       "Retaliation is shown where a plaintiff demonstrates '1) that she was engaging in a
6  protected activity, 2) that she suffered an adverse employment decision, and 3) that there was
7  a causal link between her activity and the employment decision.'" *Davis v. California Dept.*
8  *of Corr. & Rehab.,* 10-17890, 2012 WL 2025004 at *3 (9th Cir. June 6, 2012) quoting
9  *Hashimoto v. Dalton,* 118 F.3d 671, 679 (9th Cir. 1997). Once the plaintiff establishes a prima
10 facie case of retaliation, if the defendant provides a legitimate rationale for an adverse action,
11 the burden shifts to the plaintiff to show that the proffered reason was pretextual. *Hashimoto,*
12 118 F.3d at 679.

13      Plaintiff filed a complaint with the City in June 2009, a complaint with DFEH in
14 September 2009, and a complaint with EEOC in April 2010. Only his September 2009
15 complaint to DFEH contained allegations of race discrimination, and that complaint
16 specifically alleged that the discrimination did not begin until January 2009. The adverse
17 employment decisions that Plaintiff relies upon to show retaliation occurred five years prior
18 to the filing of Plaintiff's first formal complaint to the City. Plaintiff cannot recover for
19 adverse employment actions he suffered in 2004 on the grounds of retaliation for complaints
20 he filed in 2009. Even if Plaintiff were to establish a prima facie case of retaliation, the
21 evidence on the record shows that Plaintiff did not pass the eligibility test for a promotion after
22 2004 and that Plaintiff had received written reprimands regarding his work performance; this
23 evidence provides a legitimate rationale for Defendant's conduct in not promoting Plaintiff.

24      Plaintiff fails to show that the adverse employment decisions he suffered were causally
25 linked to the protected activity of filing complaints of racial discrimination. Defendant is
26 entitled to judgment as a matter of law on Plaintiff's claim for retaliation. Defendant's motion
27 for summary judgment on Plaintiff's claim for retaliation is granted.

28

1 **D.     Deprivation of Civil Rights Under 42 U.S.C. § 1983**

2     Defendant contends that "because plaintiff cannot establish that the he was discriminated against or retaliated against, his derivative claim for violation of 42 U.S.C. § 1983 fails as a matter of law." (ECF No. 34-1 at 19). Defendant asserts that Plaintiff has never been demoted at his job with the City and contends that Plaintiff has no evidence to support his contention that he was deprived of a constitutional right under the color of law in violation of due process.

    Plaintiff contends that he "was deprived of his due process rights by not being afforded a fair hearing and a meaning[ful] opportunity to be heard .... Plaintiff no longer works with the City. He was demoted, not allowed to act in more favorable positions or advance. There is an adequate violation of law." (ECF No. 46-1 at 18).

    Plaintiff has failed to submit any evidence to support the legal claims of his Complaint. Plaintiff has not shown that he suffered racial discrimination, disability discrimination, or retaliation by Defendant. Plaintiff has not shown that any constitutional right has been violated by the conduct of Defendant. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for a violation of 42 U.S.C. § 1983 is granted.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant City of El Cajon (ECF No. 34) is GRANTED. The Clerk shall enter Judgment in favor of the Defendant and against the Plaintiff.

DATED:  September 26, 2012

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge